7160

RAILROAD COMMISSIONERS v. COLUMBIA, NEWBERRY &
LAURENS R. R. CO.

RAILROAD COMMISSIONERS—RAILROADS—CONSTITUTIONAL LAW.—The stat-
utes, Code 1902, 2067, 2068, 2069, giving to the railroad commissioners
supervision of railroads, is not unconstitutional in that it does not
expressly provide for notice to and hearing of the railroads before
action by the board, for the statutes contemplate the board will obey
the constitutional mandate and give such notice and hearing; nor
are the statutes unconstitutional in that they take the management of
the railroad property away from the control of its owners.

Petition in the original jurisdiction of this Court by B.
L. Caughman, J. H. Earle and J. M. Sullivan as Railroad
Commissioners, asking for writ of mandamus against
Columbia, Newberry and Laurens Railroad Company.

*Attorney General J. Fraser Lyon,* for petitioners.

*Messrs. Lyles & Lyles,* contra.

April 13, 1909.   The opinion of the Court was delivered
by

MR. JUSTICE WOODS.   B. L. Caughman, J. H. Earle and
J. M. Sullivan, Railroad Commissioners, by their petition
ask the Supreme Court to enforce by mandamus an order
made by them as Railroad Commissioners, requiring that
the Columbia, Newberry & Laurens Railroad Company
"should provide additional side track room at Slighs, S. C.,
so that side track room would accommodate, in a way so
as to be convenient, patrons loading and unloading at least
four cars, and that said side track be completed on or by
August 1, 1908; that a passenger shed be erected at Slighs,
S. C., sufficient in size for the convenience and the accom-
modation of the traveling public on or by September 1,
1908."   The application is made under section 2119 of
Civil Code, which provides the writ of mandamus as a

remedy for neglect or refusal of a railroad company to comply with the rules and regulations of the Railroad Commissioners within the limits of their authority.

The petition alleges, that the order was made because of complaint made to the Railroad Commissioners by citizens residing in the vicinity of Slighs, alleging that the Columbia, Newberry & Laurens Railroad Company was furnishing "insufficient accommodation at said point for passengers travelling on said road, and insufficient facilities for receiving and delivering freight at said point; in that there was no sufficient passenger or freight depot; and in that there were insufficient side track facilities for the handling, receiving and delivery of freights received and delivered at said point, and asking that said railroad company be compelled to furnish a suitable passenger station and sufficient side tracks to accommodate not less than four cars " The petition for mandamus further sets out that the order above recited was made after notice to the respondent and investigation of the complaint including the hearing of the respondent; that after the order was made, the Commissioners on the request of the respondent granted to it a full rehearing of the whole matter; that after such rehearing, the commissioners decided that the order should remain in force, and caused the same to be duly served on the respondent; and that though more than sixty days have elapsed, the respondent has failed to comply with the order.

The respondent demurred to the petition on the ground that "it does not state facts sufficient to constitute a cause of action, in that the statute or statutes of this State, under which the Board of Railroad Commissioners purported to act, are, and always have been, null and void and of none effect upon the following grounds :

(a) "That the said statute or statutes violate and are repugnant to the Fourteenth Amendment to the Constitution of the United States, section 1 and art. I, sec. 5 of the Constitution of the State of South Carolina, in that it,

or they deprive your respondent of its liberty and property without due process of law, in that the said statute or statutes make no provision for notice to the railroads of the hearing before the Railroad Commissioners, from which the said orders of the Commission are to result, and in no way require an opportunity to be heard to be given the railroads before or after the passage of the said orders.

(b) "That the said statute or statutes violates and are repugnant to the aforesaid section of the Constitution of the United States and of this State, in that it or they attempt to take the whole and entire management of the railroads of this State from the hands of their owners, and place it in the hands of the Board of Railroad Commissioners; thus placing upon your respondent and the other railroads of this State, burdens beyond the duties they owe the public, and depriving your respondent of its liberty and property without due process of law."

The Constitution of South Carolina provides: "A commission is hereby established to be known as 'the Railroad Commission,' which shall be composed of not less than three members, whose powers over all transporting and transmitting corporations, and duties, manner of election and term of office shall be regulated by law; and until otherwise provided by law the said Commissioners shall have the same powers and jurisdiction, perform the same duties and receive the same compensation as now conferred, prescribed and allowed by law to the existing Railroad Commissioners. * * *" Article IX, section 14. By section 2067 of Civil Code, the Railroad Commissioners are given general supervision of all railroads. By section 2068, they are required to apply for injunction or mandamus against any railroad company which after notice continues to violate any law or neglects "in any respect or particular, to comply with the terms of its charter, or with the provisions of any of the laws of the State, especially in regard to the connections with other railroads, the rates of toll, and the time

schedule." Section 2069 thus confers powers and imposes duties with more particularity: "Whenever in the judgment of the Railroad Commissioners, it shall appear that repairs are necessary upon any such railroad, or that any addition to the rolling stock, or any enlargement of, or improvement in, the stations or station houses, or any modification in the rates of fare for transporting freight or passengers, or any change in the mode of operating the road and conducting its business, is reasonable and expedient, in order to promote the security, convenience and accommodation of the public, they shall give information, in writing, to the corporation of the improvements and changes which they adjudge to be proper; and if the said company shall fail, within sixty days, to adopt the suggestions of said Commissioners, they shall take such legal proceedings as they may deem expedient, and shall have authority to call upon the Attorney-General to institute and conduct such proceedings."

There is no express provision of the statute that the Railroad Commissioners shall give notice and an opportunity to a railroad company to be heard before having imposed upon it the burden of making the enlargements, improvements or changes which the Commissioners may deem reasonable and expedient; and it is contended by respondents that the absence from the statute of such express provision makes the statute unconstitutional, because it contemplates depriving the respondent of its liberty and property without due process of law. The statute providing for Railroad Commissioners has been before this Court in a number of cases, but in none of them was this question made and decided. The leading case which seems to give some support to the position taken by the respondent is *Chicago M. & St. P. Ry. Co.* v. *Minnesota,* 134 U. S., 418, 457, 33 L. Ed., 970. The question there arose on rates of freight fixed by the Railroad Commission. In declaring the act as construed by the Supreme Court of Minnesota to be

unconstitutional, the Court said: "No hearing is provided for, no summons or notice to the company before the Commission has found what it is to find and declare what it is to declare, no opportunity provided for the company to introduce witnesses before the Commission, in fact, nothing which has the semblance of due process of law; and although, in the present case, it appears that, prior to the decision of the Commission the company appeared before it by its agent, and the Commission investigated the rates charged by the company for transporting milk, yet it does not appear what the character of the investigation was or how the result was arrived at." The Courts of New York, Indiana and Virginia in considering the same principles as applied to special taxes or assessments on property held that the statute must in terms provide for notice and opportunity to the property owner to be heard or it will be unconstitutional, as imposing a special burden without hearing, and, therefore, depriving a citizen of his property without due process of law. *Stuart* v. *Palmer,* 74 N. Y., 188, 30 Am. Rep., 289; *Kuntz* v. *Sumption* (Ind.), 2 L. R. A., 657; *Violett* v. *Alexandria,* 92 V., 561, 53 Am. St., 825.

These decisions cannot be sustained either on principle or by authority. It cannot be doubted that the respondent was entitled, as a constitutional right, to notice and hearing, before the Railroad Commissioners could impose upon it the burden of making the changes in its station and track at Slighs; and it follows, if the statute purported to authorize the imposition of the burden without notice to the respondent and opportunity to be heard, it would be unconstitutional. But express statutory requirement for such notice and hearing is not essential, for the reason that the constitutional requirement that there shall be notice and opportunity to be heard is a part of the law governing the Railroad Commissioners. As the statute is silent on the subject, the presumption is that the Legislature intended for the Commissioners to comply with the Constitution, not to

violate it.  The requirement that the burdens, imposed by them in regulating the business of the railroads, should be reasonable and expedient in order to promote the security, convenience and accommodation of the public, implies that they shall make an investigation in order to ascertain what is reasonable, and that they shall, in pursuing the investigation, adopt, in their discretion, any suitable procedure not forbidden by law.  The argument comes to this.  The Railroad Commissioners are under two laws, namely, the statute law of the State, which confers upon them certain powers over railroads, and the constitutional law of the State and of the United States, which requires that they shall exercise the powers conferred by statute only by due process of law, that is, after giving the railroad company due notice and opportunity to be heard.  A statute is invalid which requires something to be done which is forbidden by the constitution, but it can not be essential to the validity of a statute that it should enjoin obedience to the Constitution.

The great weight of authority is to the effect that, while notice of a special burden or duty, which a board, such as this proposes to impose, must be extended, and an opportunity to be heard on the rightfulness of the exactions must be given, it is not necessary that the statute under which the board acts should expressly provide notice.  *Paulsen* v. *Portland,* 149 U. S., 30, 37 L. Ed., 637; *Chicago B. & L. R. R.* v. *Nebraska,* 170 U. S., 57, 42 L. Ed., 948; *French* v. *Barber A. P. Co.,* 181 U. S., 324, 45 L. Ed., 879; *Naylor* v. *Harrisonville* (Mo.), 105 S. W., 1074; *Shannon* v. *Portland,* 38 Oregon, 392, 62 Pac., 53; *Gilmore* v. *Hentig* (Kan.), 5 Pac., 781; 8 Cyc., 1102.

The second ground of demurrer has no foundation.  No attempt is made by the statute to take the management of the railroad property of the State away from the owners. The statute provides for nothing more than such supervision of railroads, as is reasonable and expedient for the public

welfare. It has long been settled that a State Legislature has the right to intrust such supervision to a Board of Commissioners. *Stone* v. *Farmers' L. & T. Co.*, (Railroad Commissioner Cases), 116 U. S., 307, 29 L. Ed., 636.

The judgment of this Court is that the demurrer be overruled, and that the respondent have twenty days from the filing of this decree to answer the petition.