**M. B. DENTON et al., Appellants.**

v.

**CITY OF AUSTIN, Appellee.**

**No. 8307.**

Court of Civil Appeals of Texas, Beaumont.

July 12, 1979.

Rehearing Denied Aug. 29, 1979.

Barr McClellan, Austin, for appellants.

Jerry L. Harris, Sheila Finneran, J. Pat Bond, Austin, for appellee.

KEITH, Justice.

Plaintiffs appeal from an order which denied the temporary injunction which was sought to restrain the defendant City from suspending Denton's master electrician's license.[1] The denial was based upon a finding in the judgment that the plaintiff had "failed to show a probable right which would entitle them to a temporary injunction."

However, the court did order the status quo to be maintained and continued in effect a restraining order theretofore entered forbidding City from suspending the license pending perfection of the appeal. Having perfected his appeal to the Court of Civil Appeals for the Third Supreme Judicial District at Austin, that court granted plaintiff's motion to extend the restraining order pending the determination of the appeal. The case reaches our docket upon transfer by the Supreme Court of Texas.

*Factual Statement*

Appellant was licensed originally as a master electrician by City in 1971, and such license had been renewed annually by payment of a fee. At all times material to this suit, plaintiff was engaged in the business of an electrical contractor doing both residential and commercial work under his corporate name. Under the Electrical Code of the City of Austin, no electrical work could be done commercially by any entity except one under the guidance of a master electrician. Plaintiff's license permitted his company to engage in such activities.

His company employed twelve electricians, all of whom were licensed, and his monthly payroll was between twelve and fifteen thousand dollars on a gross volume of thirty-five to fifty thousand dollars a month.

On July 27, 1978, the Clerk of the Municipal Court of the City of Austin wrote a letter to plaintiff advising that he had been charged by complaint filed in such court with the offense of "VIOLATION OF ELECTRIC CODE" and the hearing would be held in such court on August 4, 1978, and that he should be present.

Plaintiff learned, when he appeared in court, that it was charged that on July 21, 1978, he had violated the code, the material provisions of the complaint being set out in the margin.[2] Although accompanied by counsel, plaintiff pleaded guilty to such charge and paid the fine assessed by the court, $13.50.

On September 19, 1978, he received a letter from the City's Director, Building Inspection Department, informing him that because of his conviction in the Municipal Court, noted earlier, "your master electrician's license previously issued to you by the City of Austin Building Inspection Department has been automatically suspended for six months, effective August 15, 1978."

No hearing was had by any agency of the City except the criminal proceedings in the Municipal Court. Suit was filed almost immediately after receipt of notification of

---

1. The license was issued to Denton, individually, but was used in the conduct of his business conducted under the name of M. B. Denton Electric, Inc., of which he was the sole stockholder. Throughout the opinion we will speak only of Denton, individually, as the plaintiff.

2. It was charged that plaintiff "did knowingly employ a person to perform work at 500 West Ben White Boulevard, therein situated, as a journeyman electrician when said person was not licensed as a journeyman electrician, contrary to Section 37–35(g), Section 37–1 and Section 37–20 of the Austin City Code, 1967 as amended."

suspension of the license, but the order of suspension has been held in obeyance by court order so that plaintiff is, insofar as we know, still in business.

We quote in the margin the operative language of the provision upon which City relies for the "automatic suspension." [3]

*Opinion*

Although plaintiff was not licensed to practice one of the learned professions, his privilege to engage in the work of a master electrician in the City of Austin, once acquired, was a right protected by the due process clause of the state and federal constitutions. *House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 657 (Tex.1965), and cases therein cited. Once the privilege is granted, it cannot be taken away "except for good cause," since the licensee's very existence depends upon the license. *Id.*

As noted in *House of Tobacco,* being "entitled to due process of law, [he] was denied such, since the order forfeiting his permit was a final one." *Id.*

The Electrical Ordinance is printed in a booklet form which contains more than forty pages of fine print, much of which is technical in nature.[4] The suspension provision relied upon by City does not provide for notice or hearing before suspension of the license, nor does it provide for an appeal from an order of suspension.

■ Plaintiff argues, and with persuasiveness and cogency, that such ordinance runs afoul of the constitutional requirements of due process as laid down in *House of Tobacco,* supra, and *Industrial Accident Board v. O'Dowd,* 157 Tex. 432, 303 S.W.2d 763, 766 (1957). Under the rationale of *Francisco v. Board of Dental Examiners,* 149 S.W.2d 619, 622 (Tex.Civ.App.—Austin

1941, writ ref'd), plaintiff was entitled to notice of a hearing to revoke his license. As said in *Francisco* :

> "No character of notice, hearing or review of the order of revocation is provided. The order operates instanter, and the licensee is at once deprived of the right lawfully to practice his profession."

To the extent that the ordinance in question authorizes the suspension of a license without notice, it contravenes the rules noted herein and is invalid.

■ This being an appeal from an order denying a temporary injunction, we are cognizant of the restricted authority granted to this court in reviewing the trial court's action. See *Davis v. Huey,* 571 S.W.2d 859, 861–862 (Tex.1978):

> "Appellate review of an order granting or denying a temporary injunction is strictly limited to determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order."

Unlike the fact situation facing the Court in *Zmotony v. Phillips,* 529 S.W.2d 760 (Tex. 1975), the facts in the case at bar are undisputed and it is admitted, at least tacitly, that plaintiff will suffer irreparable damage if the temporary injunction is denied. Indeed, both the trial court and the Third Court of Civil Appeals have so held in this case, and we concur.

Following the precedent set in *House of Tobacco,* supra, and pursuant to *Tex.R. Civ.P. 434,* we render the judgment which the trial court should have rendered: That a temporary injunction be issued as prayed for by plaintiff's petition. Plaintiff's bond filed in connection with the temporary restraining order is continued in effect as a temporary injunction bond until the entry of a final judgment in the cause below.

---

**3.** Section 37–37 of the Electrical Ordinance reads in part:

"(a) The license of any person shall be automatically suspended upon final conviction of any of the following offenses:

    \*    \*    \*    \*    \*    \*

"(3) Employing as a master, journeyman or apprentice electrician any person not then licensed as provided in this chapter.

"(b) The suspension provided for in this section shall in the first instance be for a period of six months."

**4.** In some instances, other codes are included by reference. Thus, Section 37–3 requires that all electrical work "be done in accordance with the National Electrical Code and the National Electrical Safety Code," neither of which are included in the ordinance except by reference.

Out of an abundance of caution, and in order to protect fully the rights of the plaintiff, we also order that the temporary injunction entered by the Third Court of Civil Appeals shall remain in full force and effect until dissolved or set aside by some court of competent jurisdiction.

Reversed and temporary injunction granted.